## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
## ASHLAND, LONDON, AND LEXINGTON DIVISIONS

| | | |
|---|---|---|
| IN RE: | : | |
| | : | **Chapter 7** |
| **LICKING RIVER MINING, LLC,** *et al.* | : | **Case No. 14-10201** |
| | : | **Jointly Administered** |
| **Debtors** | : | |
| ———————————————— | : | |
| | : | |
| **PHAEDRA SPRADLIN, TRUSTEE,** | : | |
| *on behalf of J.A.D. Coal Company, Inc.,* | : | |
| *Licking River Resources, Inc., S. M. & J.,* | : | |
| *Inc., Sandlick Coal Company, LLC, Fox* | : | |
| *Knob Coal Company, Inc., Licking River* | : | |
| *Mining, LLC, Oak Hill Coal, Inc., Harlan* | : | |
| *County Mining, LLC, U.S. Coal Marketing* | : | |
| *LLC, and U.S. Coal Corp.,* | : | |
| | : | **Adv. No. 16-1034** |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | |
| **WRIGLEY'S 7-711, INC.,** | : | |
| | : | |
| **Defendant** | : | |
| ———————————————— | : | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Defendant Wrigley's 7-711, Inc.'s ("Wrigley" or

"Defendant") Motion to Dismiss First Amended Complaint [ECF No. 25 ("Motion")] and

supporting Memorandum [ECF No. 25-1 ("Memorandum")].   In her First Amended Complaint

[ECF No. 27 ("Amended Complaint" or "AC")], Plaintiff Phaedra Spradlin, chapter 7 trustee

("Trustee"), asserts eight claims against Wrigley on behalf of the jointly-administered Debtors[1]

---

[1] The "Debtors" are, collectively, U.S. Coal Corporation ("U.S. Coal"), Licking River Mining, LLC ("LR Mining"), Licking River Resources, Inc. ("Resources"), S. M. & J., Inc. ("SM&J"), J.A.D. Coal Company, Inc. ("JAD"), Fox Knob Coal Co., Inc. ("Fox Knob"), Oak Hill Coal, Inc. ("Oak Hill"), Sandlick Coal Company, LLC ("Sandlick"), Harlan County Mining, LLC ("Harlan"), and U.S. Coal Marketing LLC ("Marketing").

seeking to avoid Debtor(s)' transfers to Wrigley under her chapter 5 avoidance powers, §§ 544,

547, 548, 549, and 550.[2]    Pursuant to Civil Rule 12(b)(6), made applicable to this proceeding by

Bankruptcy Rule 7012(b), Wrigley moves the Court to dismiss the Amended Complaint in its

entirety with prejudice.    The Court having reviewed the record, heard arguments of counsel, and

being otherwise sufficiently advised, finds that Defendant's arguments are well-founded and, for

the reasons set forth herein, will grant the Motion.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding.    28 U.S.C. § 1334(b).    Venue

is proper in this District.    28 U.S.C. § 1409.    This is a core proceeding.    28 U.S.C.

§ 157(b)(2)(F), (H).    Trustee pled that "the Court may enter final orders for matters contained

herein."    [AC ¶ 3.]    Wrigley consented to this Court entering final judgment "on the causes of

action asserted against it, including non-core and *Stern* claims."    [ECF No. 28.]

## PROCEDURAL HISTORY

Trustee commenced this adversary proceeding on June 12, 2016.    Her original complaint

[ECF No. 1 ("Original Complaint")] asserted eight counts against Wrigley under the same legal

theories alleged in the Amended Complaint.    On August 9, 2016, Wrigley moved to dismiss the

Original Complaint, contending that it failed to state any claim upon which relief could be

granted.    Trustee did not respond to the initial motion; rather, on October 10, 2016, the parties

filed a Joint Stipulation permitting Trustee to file an amended complaint.    Trustee filed the

Amended Complaint on October 19, 2016.    Now, Wrigley moves to dismiss the Amended

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.
References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule ___," and references to the
Federal Rules of Civil Procedure appear as "Civil Rule __."

Complaint in full, arguing that it fails to state claims upon which relief can be granted.   The

Court held a hearing on the Motion on February 16, 2017.

## STANDARD OF REVIEW

Civil Rule 12(b)(6) contemplates a defense on the basis that a complaint "fail[s] to state a

claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).   Civil Rule 8, made

applicable in adversary proceedings by Bankruptcy Rule 7008(a), requires "a short and plain

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).   In

analyzing this pleading requirement in connection with a motion to dismiss, the United States

Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action will not do' . . . . [n]or does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'"   *Id.* (quoting *Twombly*, 550 U.S.

at 555, 557).

## BACKGROUND AND FACTS ALLEGED IN THE
## AMENDED COMPLAINT AND ITS EXHIBIT[3]

Debtors were coal mining operators.   Prior to their bankruptcy cases, Debtors had

financial difficulties for a variety of reasons, including that the domestic demand for coal

decreased dramatically, mining costs rose sharply due to the regulatory environment in which

Debtors operated, and Debtors operated with an "unsustainable level of debt" that burdened them

---

[3] The Court accepts all well-pleaded factual allegations in the Amended Complaint as true and construes them liberally in Trustee's favor.   *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citations omitted).

with heavy debt payments that they were unable to consensually restructure.   In total, Debtors

owed approximately $75 million prior to the commencement of their bankruptcy cases.   The

Amended Complaint does not comparably allege the value of Debtors' assets at either the

commencement of their bankruptcy cases or on the dates that the transfers that Trustee seeks to

avoid were made, although it contains conclusory statements that Debtors were insolvent.

As part of their operations, Debtors regularly purchased goods and services from various

entities and made payments to their suppliers, including the transfers at issue in the Amended

Complaint.   Wrigley, a Kentucky corporation, had a business relationship with Debtors.

"During the course of their relationship, the Debtors and Wrigley apparently entered into

numerous agreements, which are evidenced by invoices, communications and other documents

(collectively, the 'Agreements')."[4]   [AC ¶ 30.]   Although Trustee alleges that Debtors and

Wrigley did business pursuant to the Agreements, she attached no such documents as exhibits to

the Amended Complaint.   Trustee asserts that the Agreements were not arms-length, but the

Amended Complaint does not set forth facts supporting this contention.

"Defendant allegedly provided goods and/or services to one of the Debtors, including but

not limited to the invoices between the parties."   [AC ¶ 38.]   "Debtors' employees, directors

and officers consistently gave special attention to Defendant's payment schedule," and

"Defendant was paid on all its Agreements with the Debtors," even when "numerous creditors of

the Debtors remained unpaid."   [*Id.* ¶¶ 34, 35, 41.]   Debtors' payments to Defendant "were

significant for the type of business conducted by the Defendant, a gas and conveyance [*sic*]

store."   [*Id.* ¶ 36.]   Trustee alleges that Debtors' payments to Defendant "cannot be supported

---

[4] The Court adopts the definition of the term "Agreements" as used in Paragraph 30 of the Amended Complaint for
purposes of this Opinion.

by the Debtors [*sic*] records," but the Amended Complaint lacks any factual detail explaining

that contention or her assertion that Debtors received less than reasonably equivalent value for

the transfers that Trustee seeks to avoid.   [*Id.*]

Defendant's owner and President is John Whitt ("Whitt"), who served on the U.S. Coal

board of directors at some unspecified time.[5]  The Amended Complaint does not allege that

Whitt or Wrigley had any relationship with any other Debtor.   In his dual role as a U.S. Coal

director and Defendant's owner, Whitt was "involved in the operations of Defendant [and]

played a role in negotiating the Agreements."   [AC ¶ 32.]   Whitt also "had significant influence

on which creditors were paid by the Debtors," but Trustee does not allege that he improperly

exercised such influence.   [*Id.* ¶ 22.]   Whitt exerted his influence over payments Debtors made

to Defendant, which Trustee alleges is supported by "[e]mail correspondence between

Defendants' officers and directors."[6]   [*Id.* ¶ 33.]   Based on Whitt's prior service on the U.S.

Coal board and his ownership of Wrigley, Trustee concludes that Wrigley, a corporation, "is an

'insider' of the Debtors as defined by" § 101(31).   [*Id.* ¶ 22.]

Exhibit A to the Amended Complaint [ECF No. 24-1 ("Exhibit A")] lists transactions

with Wrigley in four separate charts.   Each chart identifies a "Company Name," and there is a

separate chart for Debtors LR Mining, Resources, SM&J, and JAD (collectively, the "Transferor

Debtors").   No chart references any of the other six Debtors, nor does the Amended Complaint

identify any transactions involving other Debtors.   The charts itemize "Vendor Payments" to

Wrigley (listed under "Vendor Name"), but no chart expressly states that any of the Transferor

---

[5] Although Trustee asserts in her Response that the Amended Complaint alleges that Whitt was the President of the U.S. Coal board of directors, the Amended Complaint does not allege this.   (Resp. 5, 8, 9.)

[6] The Amended Complaint does not explain the phrase "Defendants' officers and directors."   There only is one defendant in this proceeding, Wrigley.   The Amended Complaint does not attach the email correspondence referenced in Paragraph 33.   Accordingly, the Court would have to speculate to give meaning to this allegation.

Debtors is the payor.   Exhibit A also contains some specific information (including dates, amounts, and recipient) about "Vendor Invoices" leading to "Vendor Payments" or "Vendor Credit Memos" between January 2009 and February 2015, presumably from one of the Transferor Debtors to Wrigley, which resulted in payments totaling $2,104,622.85.[7]   Some line items on Exhibit A also briefly describe goods or services (e.g., "operating supplies," "reclamation," "equipment rental," "kerosene," "straw").

Based on the foregoing, Trustee "seeks to avoid and recover from the Defendant the transfers made to the Defendant within five (5) years of the filing of the Bankruptcy ('Petition Date'),[8] set forth in Exhibit A, which total $2,097,408.14 ('Total Transfers') . . . ."   [AC ¶ 1.]

## ANALYSIS

I.   **The Amended Complaint Plausibly Alleges that Only the Transferor Debtors Made Transfers to Wrigley.**

Trustee's claims are based, at least in part, on the allegation that "the Debtors" made avoidable transfers to Wrigley.   Trustee's frequent references to transfers that "the Debtors" made to Wrigley reflect a persistent problem with Trustee's pleading:   Trustee generally refers to all Debtors, collectively.   To survive a motion to dismiss, the Amended Complaint must plausibly allege which Debtor(s) made each of the Total Transfers that Trustee seeks to avoid:

> Applying [Civil Rule 8] to preference and fraudulent transfer claims, the pleader must provide more than a mere recitation of the statutory elements of the cause of action.   Instead, the pleader must identify the set of facts upon which he seeks to recover.   At the very least, the rules of procedure require the pleader of a preferential or fraudulent transfer claim to reasonably identify the types of

---

[7] Although the Amended Complaint seeks "Total Transfers" of $2,097,408.14, Exhibit A lists transactions totaling $2,104,622.85.   Neither the Amended Complaint nor Trustee's Response explains the difference.

[8] The Amended Complaint defines the "Petition Date" as "the filing of the Bankruptcy," and uses this term throughout.   [AC ¶ 1.]   This definition lacks clarity because Debtors' bankruptcy cases did not all commence on the same date.   The allegations in Count Four, seeking relief for actual fraud under state law, assist slightly because Trustee seeks to recover the Total Transfers made "prior to the filing of the involuntary bankruptcy."   However, creditors filed involuntary petitions against some of the Debtors on several different dates, so Trustee's allegations referencing any date certain throughout the Amended Complaint are unclear.

transfers sought to be avoided.   Some courts have held that such identification must include the amount and date of the transfers together with the name of the transferor and transferee.

*State Bank & Trust Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 293 (Bankr. S.D. Ohio 2007).   Claims of actual fraud, like those in Counts Two and Four the Amended Complaint, are also subject to the heightened "particularity" pleading standard in Civil Rule 9(b), under which a plaintiff must allege the following for each transfer it seeks to avoid:   "the date of the transfer; the amount of the transfer (or if the transfer was of property other than money, the property that was transferred and its value); the name of the transferor; the name of the initial transferee; and the consideration paid, if any, for the transfer."   *In re NM Holdings Co., LLC*, 407 B.R. 232, 261 (Bankr. E.D. Mich. 2009) (citations omitted).

"Whether a complaint adequately identifies a particular transfer is determined by asking whether the defendant could respond to the claims with appropriate affirmative defenses." *Spradlin v. Pryor Cashman, LLP (In re Licking River Mining, LLC)*, 565 B.R. 794, 803 (Bankr. E.D. Ky. 2017) (citing *Motorwerks*, 371 B.R. at 293).   In this case, the Amended Complaint identifies the Total Transfers to be avoided as those set forth on Exhibit A, which only itemizes transactions involving the four Transferor Debtors.   Neither Exhibit A nor the Amended Complaint references transfers made by any of the other six Debtors, which makes it impossible for Wrigley to assess its defenses with respect to any such transfer.

The only plausible inference that the Amended Complaint supports is that the Transferor Debtors made the Total Transfers attributed to them on Exhibit A.   Thus, the Amended Complaint fails to state claims to avoid or recover transfers to Wrigley by Debtors U.S. Coal, Fox Knob, Oak Hill, Sandlick, Harlan, or Marketing.   The Court will analyze the Amended Complaint's sufficiency only with respect to transfers by the Transferor Debtors to Wrigley.

## II.     Count One Fails to State a Claim to Avoid Preferential Transfers upon which Relief Can Be Granted.

In Count One, Trustee seeks to avoid a portion of the Total Transfers (not less than $259,466.91) that the Transferor Debtors made to Wrigley during the year prior to the commencement of their bankruptcy cases as preferential transfers to an "insider" under § 547(b). The parties devoted nearly the entirety of their arguments to whether Trustee has alleged facts sufficient to support a plausible inference that Wrigley is an "insider" of Debtors such that Trustee can avail herself of the one-year look-back period in § 547(b)(4)(B).

Wrigley avers that "[t]he Amended Complaint concludes that Wrigley is an 'insider,' but the factual allegations in the Amended Complaint are insufficient to warrant that inference." [Mem. 5.]   Wrigley argues that Count One should be dismissed because the only transactions on Exhibit A made within the standard 90-day avoidance period are less than the $6,225.00 *de minimis* threshold in § 547(c)(9).   Trustee responds that "[t]he Amended Complaint adequately alleges that Defendant was (i) a statutory insider due to its ownership and management by John Whitt who was a director and officer of a Debtor as well as a person in control of the Debtors, and (ii) non-statutory insider by its close relationship with an insider."   [Resp. 5.]

The Bankruptcy Code defines "insider" in § 101(31).   "Courts also recognize that entities that do not fall within the Code's definition of an 'insider' still may be found to be 'non-statutory insiders.'"   *Spradlin v. Monday Coal, LLC (In re Licking River Mining, LLC)*, No. 16-1035, 2017 WL 1380270, at *5 (Bankr. E.D. Ky. Apr. 13, 2017) (citing *Rieser v. Milford (In re Chari)*, 276 B.R. 206, 212 (Bankr. S.D. Ohio 2002) ("the relationships listed in the statute are not exhaustive, but only illustrative examples of 'insider' relationships")).   As discussed below, taking the Amended Complaint's well-pleaded factual allegations as true and construing them liberally in Trustee's favor, Trustee's position lacks merit.

8

**A.      Defendant is Not an Insider of Any Transferor Debtor.**

**1.      Defendant is Not a Statutory Insider.**

Trustee argues that "under 11 U.S.C. §§ 101(31)(B) [and] (E), and [101](2)(A),

Defendant, because its owner and President was John Whitt, was a statutory insider of Debtors."

[Resp. 6.]   This conclusion is patently incorrect.   Applying the Code's plain language to the

facts alleged, the Amended Complaint does not plausibly plead that Wrigley is a statutory insider

of any Transferor Debtor.

Wrigley is not alleged to be a director, officer, person in control, or general partner of any

Transferor Debtor.   As a corporation, Wrigley cannot be a "relative" of a general partner,

director, officer, or person in control of a Transferor Debtor because the term "relative" connotes

an "individual" under § 101(45).[9]   Wrigley also is not alleged to be a partnership in which any

Transferor Debtor is a general partner.   Thus, the Amended Complaint does not sufficiently

plead that Wrigley is an insider under § 101(31)(B).

The Amended Complaint also does not contain a plausible factual basis to infer that

Wrigley is an insider of any Transferor Debtor under the "affiliate" provisions in §§ 101(31)(E)

and 101(2).   Trustee does not plead that Wrigley owns, controls, or holds with power to vote,

20% or more of the voting securities of any Transferor Debtor as required for insider status under

§ 101(2)(A).   Likewise, Trustee does not allege that any Transferor Debtor, or an entity that

owns any Transferor Debtor, owns, controls, or holds with power to vote, 20% or more of

Wrigley as required by § 101(2)(B).   Trustee also does not assert that Wrigley is or was

---

[9] "Relative" means an "individual related by affinity or consanguinity within the third degree as determined by the
common law, or individual in a step or adoptive relationship within such third degree."   11 U.S.C. § 101(45).

connected to any Transferor Debtor via a lease or operating agreement as required by
§ 101(2)(C) or (D).

The Amended Complaint only alleges facts to support that (for some undefined period)
Defendant's owner, Whitt, was a statutory insider of Debtor U.S. Coal under § 101(31)(B) as a
former board member of that entity.   The plausible inferences stop there, however, and do not
extend to *Defendant's* relationship with any Transferor Debtor.   Moreover, as noted earlier, U.S.
Coal is not a Transferor Debtor.   The Amended Complaint simply does not allege facts
sufficient to support a plausible inference that Wrigley, itself, is a statutory insider of any
Transferor Debtor.

Nevertheless, Trustee contends that "a transferee will be treated as an insider if the
transferee's relationship to the debtor is analogous to that relationship set forth in § 101(31)."
[Resp. 5.]   For support, Trustee cites *Barclays/Am. Bus. Credit v. Adams (In re Adams)*, 31 F.3d
389 (6th Cir. 1994), which addressed whether individual chapter 7 debtors should be denied a
discharge pursuant to §§ 727(a)(2)(A) and (B).   As part of its analysis, the *Adams* court found
that accounts receivable of Adams Plywood, Inc., a corporation, should be characterized as
"property of the [individual] debtor" under § 727(a) because the debtor wholly owned and
controlled Adams Plywood, and "Adams Plywood thus qualifies as an insider" under
§ 101(31)(A)(iv).   *Adams*, 31 F.3d at 394 and 394 n.2.

*Adams* is off-point here.   Unlike the debtor in *Adams*, the Transferor Debtors are not
alleged to own Wrigley.   Rather, the only plausible inferences supported by factual allegations
in the Amended Complaint are that non-debtor Whitt wholly owns Wrigley and that Whitt served
on U.S. Coal's board of directors at some point.   These facts are insufficient to impute statutory
insider status upon Wrigley under § 101(31) as to any Transferor Debtor.   "Courts may not

10

construe the definition of a *per se* insider beyond the plain language of the statute." *Monday*

*Coal*, 2017 WL 1380270, at \*7 (citing *Miller Ave. Prof'l & Promotional Servs., Inc. v. Brady (In*

*re Enter. Acquisition Partners, Inc.)*, 319 B.R. 626, 632 (B.A.P. 9th Cir. 2004) ("The case law

recognizes that per se insider status should not be expanded to include those who are not listed in

the statute," as "[t]o do so would result in adding language to the statute that is not there, which

it is not within the province of the court to do." (citations omitted)).

### 2.    Defendant is Not a Non-statutory Insider.

Trustee also contends that the Amended Complaint plausibly alleges that Wrigley is a

non-statutory insider owing to its "close relationship with [Whitt,] a statutory insider of the

Debtors." [Resp. 8.]   "[A] non-statutory insider will have a sufficiently close relationship with a

debtor, which may be based on control or influence over the debtor, such that dealings between

that insider and the debtor are not at arm's length."   *Monday Coal,* 2017 WL 1380270, at \*8.

The facts alleged in the Amended Complaint do not support a plausible inference that Wrigley

had a relationship with any Debtor that was sufficiently close to deem Wrigley an insider of a

Transferor Debtor.

The Amended Complaint alleges a business relationship between Wrigley and the

Transferor Debtors centered on the Agreements.   Trustee pleads that the Agreements "were not

arms-length agreements" because they were facilitated by Whitt, Defendant's owner and a

director (at some point) of U.S. Coal.   [AC ¶ 31.]   This bare conclusion results from conflating

an individual with a separately-organized corporate entity.   Whitt, personally, is not alleged to

be a party to the Agreements, and Wrigley, a corporation, is not sufficiently alleged to be an

insider of any Transferor Debtor.   Although Trustee's Response contends that the Amended

Complaint alleges "Defendant was the alter-ego of John Whitt" [Resp. 3], the pleading does not

contain such an allegation or any other factual basis to support disregarding Defendant's

corporate form.   Kentucky courts "generally [are] reluctant to disregard the corporate entity,"

and the Amended Complaint offers no factual basis to ignore this basic tenet of Kentucky law.

*Sudamax Industria e Comercio de Cigarros, LTDA v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841,

847 (W.D. Ky. 2007).

The Amended Complaint itself does little to support Trustee's argument that the

Agreements were not made at arm's length.   It does not identify which of the Agreements were

with any specific Debtor.   They are not in the record.   Based on Exhibit A, the Court can

plausibly infer only that Defendant's counter-parties were the Transferor Debtors.   Trustee has

not alleged any facts from which a plausible inference may be drawn that any Agreement was

not made at arm's length or "negotiated in good faith in the ordinary course of business by

parties, each with independent interests and acting in their own best interests."   *Anstine v. Carl*

*Zeiss Meditec AG (In re U.S. Medical, Inc.)*, 531 F.3d 1272, 1277, n.4 (10th Cir. 2008) (quoting

BLACK'S LAW DICTIONARY 109 (6th ed. 1990)).

Trustee also vaguely alleges that Whitt was "involved" in Defendant's operations and

"played a role in negotiating the Agreements" [AC ¶ 32], but the Amended Complaint includes

no facts supporting those imprecise assertions.   Trustee further alleges that Whitt had

"significant influence on which creditors were paid by the Debtors" and "attempted to, and did,

influence payments made by the Debtors to the Defendant."   [*Id.* ¶¶ 22, 33.]   Such vague

conclusory allegations, unsupported by well-pleaded facts, do not plausibly allege that

*Defendant*, an independent corporate entity, had the requisite level of influence or control over

any of the Transferor Debtors so as to impute non-statutory insider status to it.

Trustee cites a decision from the Southern District of Texas to argue that "[a] party may also qualify as a non-statutory insider if it has a close relationship with a statutory insider of the debtor – the relationship does not have to be with the Debtors themselves."   [Resp. 8 (citing *Floyd v. Hefner*, 556 F. Supp. 2d 617, 658–59 (S.D. Tex. 2008)).]   *Floyd* addresses insider status at the summary judgment stage in the context of a civil conspiracy claim against entities that helped finance the debtor's business venture.   The court found only that a question of fact existed and that a jury could conclude that the financiers were insiders of the debtor such that the *in pari delicto* defense would not apply.   The court reasoned that the debtor's directors' interests in the financiers sufficed to create a "sufficiently close relationship" with the debtor that the entities could be deemed insiders.

While instructive, *Floyd* does not discuss the allegations in the trustee's pleading in that case, rendering the decision of limited utility here.   The question presented here is whether the Amended Complaint alleges sufficient facts to create a plausible inference that Wrigley is a non-statutory insider of a Transferor Debtor.   As discussed herein, the Amended Complaint lacks sufficient factual allegations to support a plausible inference that Defendant exercised any semblance of control or influence over any of the Transferor Debtors.   Thus, the Amended Complaint fails to plausibly allege that Wrigley is a non-statutory insider.

> ### 3.      The Court May Evaluate the Sufficiency of the Allegations in the Amended Complaint Regarding Defendant's Insider Status on a Motion to Dismiss.

Trustee argues that whether a party is an insider is a fact-intensive inquiry that should not be resolved on a motion to dismiss and cites several cases for that premise.   None of those cases, however, announces a *per se* rule that, when a party is called an insider in a complaint asserting a claim under § 547, the court must take that statement as true and deny a motion to dismiss for failure to state a plausible claim that the party is an insider.   In one case Trustee cites, the court

explained: "The complaint alleges a long-standing multifaceted relationship that enabled the

defendants to dominate and control the Debtors.   Contrary to the defendants' assertions, the

complaint states more than mere conclusions, it alleges an adequate factual basis for these

conclusions."  *OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes

Corp.)*, 340 B.R. 510, 524 (Bankr. D. Del. 2006).   In contrast, the Amended Complaint only

states conclusions and does not provide an adequate factual basis to create a plausible inference

that Wrigley is an insider.

### B.    Count One Fails to State a Claim upon which Relief Can Be Granted.

Because the Amended Complaint does not sufficiently allege that Wrigley is an insider,

Trustee's Count One preference claim must be limited to transfers made within 90 days before

the date that an involuntary bankruptcy petition was filed against the specific Transferor Debtor

that made the transfer.   11 U.S.C. § 547(b)(4).   Involuntary petitions were filed against the

Transferor Debtors on the following dates:   Resources – May 23, 2014; LR Mining – May 22,

2014; SM&J – June 3, 2014; JAD – June 4, 2014.   Exhibit A reflects a single "vendor payment"

of $1,041.51 involving Resources during its 90-day preference period, two transfers totaling

$980.24 involving LR Mining during its 90-day period, and no transfers involving SM&J or JAD

during their respective 90-day periods.

"The Trustee may not avoid under this section a transfer … if, in a case filed by a debtor

whose debts are not primarily consumer debts, the aggregate value of all property that constitutes

or is affected by such transfer is less than $6,225."[10]   11 U.S.C. § 547(c)(9).   There are no

transfers within the 90-day preference periods for two of the four Transferor Debtors, and the

---

[10] This amount increased to $6,425.00 for bankruptcy cases filed or after April 1, 2016.

transfers for the other two do not reach the threshold amount.    Thus, Count One fails to state a preference claim upon which relief can be granted.

## II.    Counts Two and Four Fail to State Claims to Avoid Actual Fraudulent Transfers upon which Relief Can Be Granted.

Counts Two and Four seek avoidance and recovery of some or all of the Total Transfers premised on actual fraud.    Count Two seeks avoidance of Transfers made "[o]n or within two (2) years before the Petition Date" pursuant to § 548(a)(1)(A).    [AC ¶ 57.]    Thus, Trustee must allege "(1) a transfer of an interest of [a Debtor's] property or the incurring of an obligation; (2) made on or within [two years] of the petition date [in Debtor's respective bankruptcy case]; and (3) with actual fraudulent intent."    *Scherer v. Quality Communs., Inc. (In re Quality Communs., Inc.)*, 347 B.R. 227, 233 (Bankr. W.D. Ky. 2006).

Count Four seeks to avoid the Total Transfers made "prior to the filing of the involuntary bankruptcy" under 11 U.S.C. § 544 and K.R.S. § 378.010.[11]    [AC ¶ 67.]    The Code gives a trustee authority to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of [the Code] or that is not allowable only under section 502(e) . . . ."    11 U.S.C. § 544(b)(1).    In this case, Trustee asserts that such "applicable" Kentucky law is K.R.S. § 378.010.[12]    To state a claim under this statute, Trustee must allege that a Debtor made a transfer to Wrigley with an intent to delay, hinder, or defraud creditors by clear

---

[11] Textual references to the Kentucky Revised Statutes appear as "K.R.S. § ___."

[12] Effective as of January 1, 2016, chapter 378 of the Kentucky Revised Statutes was repealed, and Kentucky adopted the Uniform Voidable Transactions Act ("UVTA").    KY. REV. STAT. §§ 378A.005 to .140.    "No statute shall be construed to be retroactive, unless expressly so declared."    KY. REV. STAT. § 446.080(3).    The UVTA does not state that it is retroactive.    Therefore, the transfers at issue in this case occurring prior to the UVTA's enactment are subject to chapter 378, which was in effect at the time of the pertinent transfers.

and convincing evidence—the burden of persuasion associated with actual fraud.   *Russell County Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 311 (Ky. 1975).

Therefore, to survive a motion to dismiss, Counts Two and Four both require factual allegations supporting a plausible inference that the Transferor Debtors made some or all of the Total Transfers with the actual intent to hinder, delay, and defraud creditors.   Wrigley argues that both counts should be dismissed "because they fail to plead fraudulent intent with particularity, and because it is facially implausible that Debtor intended to delay, hinder or defraud other creditors by paying Defendant's valid invoices, which is evident from Trustee's Exhibit A."   [Mem. 8.]   Trustee responds that the Amended Complaint sufficiently alleges fraudulent intent via multiple badges of fraud, notwithstanding that the Total Transfers may have been on account of pre-existing debt.   The Court disagrees with Trustee.

"The heightened standard in Civil Rule 9(b), made applicable to this adversary proceeding under Bankruptcy Rule 7009, applies to intentional fraudulent transfer claims where those claims are premised on a transferor-debtor's actual intent to defraud."   *Monday Coal*, 2017 WL 1380270, at *10 (citing *Gold v. Winget (In re NM Holdings Co., LLC)*, 407 B.R. 232, 260 (Bankr. E.D. Mich. 2009)).   "It is not the fraudulent intent of the debtor that must be pled with particularity; rather it is the 'circumstances constituting fraud.'"   *Id.* (citations omitted).[13]

The Amended Complaint does not plead facts about the Transferor Debtors' intent; however, fraudulent intent may be inferred from circumstantial evidence including certain badges of fraud recognized under Kentucky law.   *Monday Coal*, 2017 WL 1380270, at *11

---

[13] While Trustee argues "[Civil] Rule 9(b) is applied less stringently to the Trustee" [Resp. 12], this Court may not "relax" the pleading standard that Trustee must satisfy.   *U.S. ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) ("In all averments of 'fraud or mistake,' the plaintiff must state with 'particularity the circumstances constituting fraud or mistake.' Fed. R. Civ. P. 9(b)," and "[w]e have no more authority to 'relax' the pleading standard established by Civil Rule 9(b) than we do to increase it.").

(citing *Jadco Enters. v. Fannon*, No. 6:12-225-DCR, 2013 U.S. Dist. LEXIS 162717, at \*35-37
(E.D. Ky. Nov. 16, 2013)).    Trustee asserts that the Amended Complaint alleges several badges
of fraud, supported by certain pled "facts."

**Badge One – Transfers Made between Persons who are Related, are Insiders, or
who Occupy a Confidential Relationship.**    Trustee points to her allegations that Defendant's
owner and President is Whitt, a former director of U.S. Coal "who had significant influence on
which creditors were paid by the Debtors."    [Resp. 15 (citing AC ¶ 22).]    This, she claims,
sufficiently pleads the insider badge of fraud.    As explained above, however, Defendant Wrigley
is a legal entity separate from its owner, Whitt.    Wrigley is not an insider of, or "related" to, any
Transferor Debtor.    The pleading lacks factual allegations that suggest Wrigley had a
confidential relationship with any Transferor Debtor.

**Badges Two/Three – False Statements/Inadequacy of Consideration.**    The Amended
Complaint also lacks factual averments alleging false statements of consideration or inadequacy
of consideration.    Trustee's Response cites Paragraph 36 to show that she pled these badges,
which provides:    "Payments made to the Debtor[14] were significant for the type of business
conducted by the Defendant, a gas and conveyance [*sic*] store, and cannot be supported by the
Debtors [*sic*] records."    [AC ¶ 36.]    Neither the allegation that payments to Wrigley were
"significant," nor the vague conclusion that payments "cannot be supported by [Debtors']
records," supports a plausible inference of inadequate consideration or false statements of
consideration for the Total Transfers.    These are "naked assertion[s]' devoid of 'further factual
enhancement,'" which do not suffice under *Iqbal* and *Twombly*.    *Iqbal*, 556 U.S. at 678 (quoting
*Twombly*, 550 U.S. at 557).

---

[14] The Court assumes this is a typographical error and Trustee meant "Defendant," not "Debtor."

17

The Amended Complaint does not allege that Wrigley failed to provide goods or services with a value equivalent to the payments it received.   It also does not allege secret or hurried transactions not in the usual mode of doing business, the use of dummy or fictitious parties, a reservation of benefits by any Transferor Debtor, control or dominion of property by any Transferor Debtor, or the like.   *Schilling v. Montalvo (In re Montalvo)*, 324 B.R. 619, 623 (Bankr. W.D. Ky. 2005).   Rather, Trustee alleges the payments to Wrigley stemmed from a duty to pay under the Agreements, pursuant to which "[t]he Defendant allegedly provided goods and/or services to one of the Debtors including but not limited to the invoices between the parties."   [AC ¶ 38.]

**Badge Four – Transfers in Anticipation of Litigation.**   Trustee cites to Paragraph 42 to support her assertion that she pled that Debtors' transfers to Wrigley were made in anticipation of litigation.   But this paragraph only alleges in relevant part that "Defendant knew that the Debtors had other creditors, some of whom were threatening litigation, that remained unpaid and that there was a strong probability that the Debtors would need to seek Chapter 11 or Chapter 7 relief."   [AC ¶ 42.]   This statement of *Defendant's* professed knowledge of threatened lawsuits or the potential for a bankruptcy filing does not speak to *Transferor Debtors'* intent in making any one of the Total Transfers to Defendant.

**Badge Five – Debtors' Insolvency when Making the Transfers.**   Trustee asserts that the Amended Complaint alleges Debtors' insolvency or financial embarrassment "at all times at least as far back as the 2009 ECM transactions." [Resp. 15 (citing AC ¶¶ 42, 52, 63).]   Neither these paragraphs, nor any other allegation in the Amended Complaint, reference "the 2009 ECM Transactions" or otherwise support a plausible inference that the Transferor Debtors were insolvent at the time that each (or any) of the Total Transfers was made.

Paragraphs 42, 52, and 63 all contain similar conclusory statements regarding Debtors'

solvency that are not supported by factual allegations.   Paragraph 42 states in relevant part that

". . . Debtors transferred an appreciable part of their property to or for the benefit of the

Defendant during the Transfer Period[15] and while the Debtors were insolvent, financially

embarrassed, and other creditors were not being timely paid . . . ."   [AC ¶ 42.]   Paragraph 52

asserts that "[e]ach Preferential Transfer was made while the Debtors were insolvent."[16]   [*Id.* ¶

52.]   Paragraph 63 alleges in relevant part that "[t]he Debtors were insolvent on the date that the

548 Transfers were made or became insolvent as a result of the Transfers."[17]   [*Id.* ¶ 63.]   But

"'a trustee's complaint cannot merely make a conclusory statement that a debtor was insolvent.'"

*Monday Coal*, 2017 WL 1380270, at *16 (quoting *Sarachek v. Right Place, Inc. (In re*

*Agriprocessors, Inc.)*, No. 10-09123, 2011 Bankr. LEXIS 3671, at *17-18 (N.D. Iowa Sept. 30,

2011) (internal citation omitted)).   Rather, "'[a] complaint must contain enough factual

information to plausibly show the debtor's liabilities exceeded assets at the time of the

transfers.'"   *Id.* (citing *Agriprocessors* at *17-18).   Trustee's conclusory statements of

insolvency in Paragraphs 42, 52, and 63 do not satisfy this standard and are the type of

"formulaic recitation of the elements" that the Supreme Court has instructed "will not do."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Paragraphs 25, 26, and 54 of the Amended Complaint, not cited by Trustee, also

reference Debtors' financial status—and also fail to allege Debtors' insolvency in a way that

---

[15] Although it is a capitalized term in the Amended Complaint, the pleading does not define this term.

[16] Paragraph 52 also asserts that "Trustee is entitled to the presumption of insolvency for each Transfer made during the Insider Preference Period pursuant [§ 547(f)]."   Trustee's citation to § 547(f) in support of her actual fraudulent transfer claims is incorrect because § 547(f) only applies to claims to avoid preferential transfers under § 547, not fraudulent transfers under § 548.

[17] The Amended Complaint defines "548 Transfers":   "On or within two (2) years before the Petition Date, the debtors made, or caused to be made, certain Transfers (the "548 Transfers") to the Defendants [*sic*]."   [AC ¶ 57.]

satisfies *Iqbal* and *Twombly*.    Paragraphs 25 and 26 discuss "Debtors' financial difficulties" and

identify prepetition debts owed to secured and unsecured creditors, but they do not comparably

allege the value of Debtors' assets to demonstrate Debtors' insolvency.    Paragraph 54 asserts

that Debtors' bankruptcy schedules show that their liabilities significantly exceed the value of

their assets, but it does not include any amounts.    Moreover, neither these paragraphs nor any

other in the Amended Complaint allege facts sufficient to support a plausible inference that the

Transferor Debtors were insolvent *at the time of each of the Total Transfers*.    The Amended

Complaint only contains vague statements referencing Debtors' financial condition at the start of

their bankruptcies, which do not suffice to establish Debtors' insolvency throughout the two-year

period covered by Count Two or the five-year period covered by Count Four.

**Badge Six – Transfers Made to Prefer One Creditor over Others.**    Trustee asserts

that the presence of transfers made to prefer one creditor over others is a badge of fraud, relying

heavily on *JADCO Enters.*, 991 F. Supp. 2d 947 (E.D. Ky. 2014).    [Resp. 15.]    Trustee's

reliance is misplaced.    In *Jadco*, the court held that even where the challenged transfer was a

payment on a preexisting debt, this did not preclude a claim that there was fraudulent intent

behind the transfer: "The correct analysis first looks at the badges of fraud, followed by the

validity of pre-existing debt. The fact finder should then determine if there was any fraudulent

intent behind the transfer(s).    The analysis does not end once evidence of pre-existing debt is

offered."    *Id.* at 953.    *Jadco* does not state that a preferential payment on a preexisting debt is a

badge of fraud.

Trustee cites Paragraphs 35 and 42 of the Amended Complaint to support her argument.

Paragraph 35 alleges:   "[p]ayments were consistently ensured to Defendant to the detriment of

other creditors of the Debtors, which were not paid in a timely manner.    While other similar

creditors were not paid, Defendant was paid on all its Agreements with the Debtors."   [AC ¶

35.]   The potentially relevant allegations in Paragraph 42 are:   ". . . Debtors transferred . . . their

property . . . to or for the benefit of the Defendant . . . while . . . other creditors were not timely

being paid; . . . Defendant knew that the Debtors had other creditors, some of whom were

threatening litigation, that remained unpaid . . . ; [and] . . . Defendant and other insiders of the

Debtors devised a scheme in which Defendant could be paid to the detriment of other creditors."

[AC ¶ 42.]   Alleging that Wrigley received payment when other creditors did not does not

support a plausible inference that any Transferor Debtor had the actual intent to hinder, defraud,

or delay other creditors when making any specific transfer to Wrigley.   "Choosing to pay one

creditor over another, without more, is not a badge of fraud; it is the basis for a preference

claim."   *Monday Coal*, 2017 WL 1380270, at *14.

In sum, the Amended Complaint does not allege sufficient facts or badges of fraud to

support a plausible inference of either (a) any Debtor's intent to hinder, delay or defraud, or (b)

badges of fraud.   Thus, Counts Two and Four seeking avoidance based on actual fraud fail to

state claims upon which relief can be granted.

### III.   Counts Three and Five Fail to State a Claim upon which Relief Can Be Granted to Avoid Constructively Fraudulent Transfers as the Amended Complaint Fails to Allege Facts Sufficient to Support a Plausible Inference that the Total Transfers Lacked the Requisite Consideration.

Counts Three and Five seek avoidance of some or all of the Total Transfers premised on

allegations of constructive fraud.   Count Three seeks to avoid the "548 Transfers" under

§ 548(a)(1)(B), and Count Five seeks avoidance of the Total Transfers under § 544 and K.R.S.

§ 378.020.   To state a claim to avoid constructively fraudulent transfers from the Transferor

Debtors to Wrigley, Trustee must allege facts that plausibly show that the Debtor making a

transfer received less than a reasonably equivalent value in exchange for such transfer under

§ 548(a)(1)(B)(i), or that transfers were made without valuable consideration under K.R.S.

§ 378.020.   Wrigley argues that "[t]here is no fact allegation in the Amended Complaint that

renders it plausible that these Transfers lacked consideration."   [Mem. 6.]

"Payment of valid antecedent debt, as a matter of law, is not a constructively fraudulent

transfer as dollar-for-dollar reduction of indebtedness amounts to 'reasonably equivalent value'

and 'consideration' under the pertinent statutes."   *Monday Coal*, 2017 WL 1380270, at *6

(citing 11 U.S.C. § 548(d)(2)(A) ("satisfaction of . . . antecedent debt" constitutes "value"); *In re*

*Southeast Waffles, LLC*, 702 F.3d 850, 855 (6th Cir. 2012) (stating "dollar-for-dollar reduction in

debt is sufficient to establish equivalent value for purposes of the fraudulent transfer statutes");

*In re Wilkinson*, 196 Fed. App'x. 337, 343-44 (6th Cir. Aug. 17, 2006) (unpublished) ("dollar-

for-dollar reduction in debt" constitutes "reasonably equivalent value" and "valuable

consideration")).   Trustee's Response states that she "expressly refuted" that "the invoices on

Exhibit A of the Amended Complaint were valid" and directs the Court to the following

allegations:

> 31.    Defendant's owner, John Whitt, was also a director of U.S. Coal,
> and facilitated these Agreements, which were not arms-length agreements.
>
> 32.    John Whitt, in his dual role as director of U.S. Coal and owner of
> the Defendant, was also involved in the operations of Defendant, played a role in
> negotiating the Agreements.
> . . .
> 35.    Payments were consistently ensured to Defendant to the detriment
> of other creditors of the Debtors, which were not paid in a timely manner.   While
> other similar creditors were not paid, Defendant was paid on all its Agreements
> with the Debtors.
>
> 36.    Payments made to the Debtor were significant for the type of
> business conducted by the Defendant, a gas and conveyance [*sic*] store, and
> cannot be supported by the Debtors['] records.

[Resp. 10; AC ¶¶ 31, 32, 35, 36.]

Taken as true, and reviewed in the light most positive to Trustee, these paragraphs do not allege facts sufficient to support a plausible inference that the Transferor Debtors "received less than reasonably equivalent value" or "were without valuable consideration" in exchange for any of the Total Transfers.   Whitt's service as a director of U.S. Coal (at some point) is irrelevant; Exhibit A does not show that U.S. Coal made any of the Total Transfers or was a party to, or negotiated any of the Agreements on behalf of, the Transferor Debtors.   Whitt's involvement in "facilitating" or "negotiating" the Agreements, without more, does not suggest that they were not made at arm's length or were inherently unfair to the Transferor Debtors.   The Amended Complaint alleges nothing about the Agreements' terms, and they are not in the record.   That Wrigley "was paid on all its Agreements with the Debtors" even when other creditors were not, and that the payments Wrigley received were "significant for the type of business conducted by" Wrigley, without factual enhancement, does not plausibly suggest that any Transferor Debtor received less than equivalent value or no consideration for the payments it made.

**IV.    Count Six Fails to State a Claim for Avoidance of Unauthorized Post-petition Transfers upon which Relief Can Be Granted.**

In Count Six, Trustee seeks to avoid transfers identified on Exhibit A "that cleared the Debtors' Bank Accounts after the Petition Date (the 'Post-Petition Transfers')" pursuant to § 549.   [AC ¶ 77 (emphasis removed).]   Trustee pleads that "the Post-Petition Transfers were never authorized by the Bankruptcy Court or under the Bankruptcy Code and, thus, in accordance with the foregoing, the Post-Petition Transfers are avoidable pursuant [*sic*] section 549 of the Bankruptcy Code."   [AC ¶ 77.]   That section provides: "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case; and . . . that is not authorized under this title or by the court."   11 U.S.C. § 549(a).   Three elements for avoidance under § 549(a) must be alleged:   (a) a transfer of estate property; (b) occurring after

23

the case's commencement; (c) that neither the Court nor any Code provision authorized.   *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 465 (6th Cir. 1991).

Here, Wrigley challenges the last element.   Relying on § 363(c)(1), Wrigley asserts that there are no facts alleged to plausibly infer that Debtors' post-petition transfers were not in the ordinary course.   The Court agrees that the Amended Complaint does not allege that post-petition transfers to Wrigley were not made in the ordinary course of the Transferor Debtors' businesses.   Trustee responds to this theory by arguing that the transfers at issue "were not made in arms-length," and she "should have the benefit of discovery."   [Resp. 16.]   This argument misses the mark.

Section 363(c)(1) authorizes a debtor in possession to undertake transactions within the ordinary course of its business without notice or a hearing.   "This permits a chapter 11 debtor the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary."   *Monday Coal*, 2017 WL 1380270, at *17 (citations omitted); *see also Wilmington Trust, Co. v. WCI Steel, Inc. (In re WCI Steel, Inc.)*, 313 B.R. 414, 417 n.2 (Bankr. N.D. Ohio 2004) ("Under section 363(c)(1) of the Bankruptcy Code payments made in the ordinary course of a debtor's business are authorized and are not avoidable under section 549(a) of the Bankruptcy Code.").   Generally speaking, courts evaluate whether a transaction has occurred in the debtor's "ordinary course of business" by assessing "whether the post-petition transaction is of a type that other similar businesses would engage in as ordinary business" (known as the "horizontal dimension test") or whether "the transaction is the sort occurring in the day-to-day operation of the debtor's business" (known as the "vertical dimension test").   *Spradlin v. Marco Mine Supply (In re Ragland Coal Co.)*, Ch. 7 No. 94-

70644, Adv. No. 96-7029, 1998 Bankr. LEXIS 1964, at *6 (Bankr. E.D. Ky. Feb. 19, 1998)

(quoting *In re Springfield Contracting Corp.*, 154 B.R. 214, 225-226 (Bankr. E.D. Va. 1993)).

The Amended Complaint does not identify a plausible factual basis upon which the Court

can infer that Wrigley provided non-ordinary course goods and/or services to the Transferor

Debtors or that any post-petition payments to Wrigley were not in the ordinary course.    Count

Six is merely a formulaic recitation of the § 549 elements; that Trustee suggests the transfers

"were not made in arms-length" adds no factual overlay to her otherwise bare legal assertions.

Trustee makes no other argument to oppose the Motion.    Count Six fails to state a claim upon

which relief can be granted.

## V.    Count Seven Fails to State a Claim for Recovery of Avoided Transfers upon which Relief Can Be Granted.

Pursuant to § 550(a), Trustee seeks in Count Seven to recover the Total Transfers

avoided as preferential and/or fraudulent transfers under Counts One through Six.    In support,

Trustee asserts that "Defendant was either the initial transferee of the Total Transfers, the

immediate or mediate transferee of such initial transferee, or the entity for whose benefit the

Transfers were made."    [AC ¶ 80.]    Trustee cannot recover from Wrigley under Count Seven

absent her success on Counts One through Six, each of which fails to state a claim on which

relief can be granted for the reasons enumerated above.    Thus, Count Seven fails to state a claim

upon which relief can be granted.

## VI.    Count Eight Fails to State a Claim for Disallowance of Defendant's Claims upon which Relief Can Be Granted.

Pursuant to § 502(d), Trustee seeks in Count Eight to disallow all of Defendant's claims

against Debtors' bankruptcy estates until Defendant pays the amount of any avoided transfers.

As with her § 550(a) claim, Trustee cannot prevail on her disallowance claim absent her success

on Counts One through Seven, each of which the Court has found fails to state a claim.   Thus, Count Eight fails as well.

**VII.    Leave to Amend Will Not Be Granted.**

The final issue is whether the Court should permit Trustee to further amend her pleading. The procedural history and law applicable to whether Trustee should be allowed to amend mirrors that found in *Monday Coal*, 2017 WL 1380270, at *18-19, and *Pryor Cashman*, 565 B.R. at 817-19.   Defendant's first motion to dismiss the Original Complaint raised the same deficiencies that Defendant again raises in this Motion regarding the Amended Complaint. Trustee chose not to remedy those deficiencies in the Amended Complaint.   She did not request leave to further amend her pleading in her Response to the instant Motion, at the hearing on same, or otherwise.[18]   As in *Monday Coal* and *Pryor Cashman*, the Court concludes that Trustee's failure to address the Original Complaint's deficiencies, despite ample time to do so, reflects either that Trustee did not take the steps necessary to proceed with her claims in good faith or that permitting additional amendment would be futile.   Therefore, Trustee will not be given leave to file a second amended complaint.

**CONCLUSION**

For the reasons stated herein, Defendant Wrigley 7-711, Inc.'s Motion to Dismiss [ECF No. 25] shall be GRANTED.   A separate order will be entered.

---

[18] The only exception is that Trustee's counsel stated at the hearing that Trustee could re-plead the issue of Debtors' insolvency.   Re-pleading insolvency would not save Trustee's claims from dismissal, as explained above.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Wednesday, June 21, 2017**
**(tnw)**